IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARY L. HEITZENRATER,  )<br>)<br>Plaintiff,  )<br>)<br>v.  )<br>)<br>COMMISSIONER OF SOCIAL SECURITY,  )<br>)<br>Defendant.  )<br>) | Civil Action No. 23-1114 |

O R D E R

AND NOW, this 30th day of September, 2024, upon consideration of the parties' cross-motions for summary judgment, the Court, after reviewing the Commissioner of Social Security's final decision denying Plaintiff's claim for disability insurance benefits under Subchapter II of the Act, 42 U.S.C. §§ 401 *et seq.,* finds that the Commissioner's findings are supported by substantial evidence and, accordingly, affirms. *See* 42 U.S.C. § 405(g); *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153-54 (2019); *Jesurum v. Secretary of U.S. Dep't of Health & Human Servs*, 48 F.3d 114, 117 (3d Cir. 1995) (citing *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988)). *See also Berry v. Sullivan*, 738 F. Supp. 942, 944 (W.D. Pa. 1990) (if supported by substantial evidence, the Commissioner's decision must be affirmed, as a federal court may neither reweigh the evidence, nor reverse,

merely because it would have decided the claim differently) (*citing Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981)).[1]

---

[1] Plaintiff raises a single argument on appeal: the Administrative Law Judge ("ALJ") failed to properly evaluate the opinions of Plaintiff's primary care providers, Aleda Elkin, CRNP, and Erick Peck, D.O. (Doc. No. 13). Specifically, Plaintiff asserts that the ALJ did not adequately explain how he considered the consistency and supportability factors in evaluating these providers' joint opinion. (*Id.* at 6-13). Plaintiff contends the ALJ ignored a good deal of probative evidence in analyzing this opinion and erred by finding the opinion unpersuasive on the basis that it was inconsistent with Plaintiff's reported activities of daily living. (*Id.* at 9-12). The Court disagrees and finds that substantial evidence supports the ALJ's findings.

The Court first notes that for cases such as this one, filed on or after March 27, 2017, the regulations have eliminated the "treating physician rule." *Compare* 20 C.F.R. § 404.1527(c)(2) (applying to cases prior to the amendment of the regulations) *with* 20 C.F.R. § 404.1520c(a) (applying to later cases). *See also* 82 Fed. Reg. 5844-01, at 5853 (Jan. 18, 2017). While the medical source's treating relationship with the claimant is still a valid consideration, "the two most important factors for determining the persuasiveness of medical opinions are consistency and supportability." 82 Fed. Reg. at 5853. *See also* §§ 404.1520c(b) and (c). One court has explained the distinction between supportability and consistency thus: "supportability relates to the extent to which a medical source has articulated support for the medical source's own opinion, while consistency relates to the relationship between a medical source's opinion and other evidence within the record." *Cook v. Comm'r of Soc. Sec.*, No. 6:20-CV-1197, 2021 WL 1565832, at *3 (M.D. Fla. Apr. 6, 2021).

Here, after analyzing all the record evidence, the ALJ found that Plaintiff was not disabled and had the residual functional capacity ("RFC") to "perform light work as defined in 20 CFR 404.1567(b) and she occasionally perform postural movements. She should avoid concentrated exposure to dangerous machinery and unprotected heights." (R. 21-22). In crafting this RFC, the ALJ evaluated all medical opinions of record, including the joint opinion of Ms. Elkin and Dr. Peck, stating:

> The record includes a January 2021 statement from Aleda Elkin, CRNP, and Erick Peck DO, the claimant's primary care provider. They state the claimant will be off task more than 25 percent of a typical workday; can maintain attention and concentration less than 15 minutes per day; and be absent four of more days per month (11F/1). They noted the claimant can carry 20 pounds occasionally, lift 20 pounds rarely and ten pounds occasionally; sit one hour and stand/walk seven hours in an eight-hour

2

> workday; and requires the option to sit/stand at will (11F/2). They indicated the claimant can occasionally perform non-overhead reaching, push, pull, operate foot controls, balance, and operate a vehicle; rarely handle, finger, feel, climb ramps and stairs, climb ladders or scaffolds, stoop, kneel, crouch, and rotate her head and neck; and never reach overhead (11F/3-4). They remarked the claimant can tolerate rare humidity and wetness, dust, odors, fumes, pulmonary irritants, extreme cold, extreme heat, and vibrations; and no unprotected heights and moving mechanical parts (11F/4). The record also includes an October 2021 statement from Dr. Peck and a November 2021 statement from Ms. Elkin and Dr. Peck. They state the claimant will be off task more than 25 percent of a typical workday; can maintain attention and concentration less than 15 minutes at a time; and be absent four or more days per month (34F/3; 36F/5; 37F/7). They note the claimant can lift and carry 20 pounds occasionally; sit one hour in an eight-hour workday; and requires the option to sit/stand at will (34F/4; 36F/6; 37F/8). They indicated the claimant can rarely operate foot controls; occasionally perform non-overhead reaching, push, pull, operate foot controls, balance, rotate her head and neck, and operate a vehicle; rarely handle, finger, feel, climb ramps and stairs, climb ladders or scaffolds, stoop, kneel, and crouch; and never reach overhead (34F/5; 36F/7; 37F/9). They remarked the claimant can rarely tolerate dust, odors, fumes, pulmonary irritants, extreme cold, and extreme heat (34F/6; 34F/8; 37F/10). These statements are unsupported by their treatment notes, which largely show the claimant is in no acute distress with normal gait, normal station, normal range of motion, regular heart rate, lungs clear to auscultation, normal respiration rate, normal coordination, no focal deficits, no murmur, no wheezes, and no edema (13F; 21F; 25F; 26F). These statements are also unsupported because it is a checklist with limited explanation. These statements are also inconsistent with the claimant's activities of daily living, which shows she has no problems with her personal care activities; walks and feeds her dog; and can prepare complete meals, do laundry, clean, drive, and shop in stores with her husband (Hearing Testimony; 3E). Further, these statements are inconsistent with the longitudinal treatment notes, which generally show the claimant is in no acute distress with normal gait, normal station, normal range of motion, intact strength, normal muscle tone, intact sensation, full range of motion, intact cranial nerves, regular heart rate and rhythm, lungs clear to auscultation, normal pulses, normal balance, no swelling, no wheezes, no rales, no thrills, no murmur, and no edema . . . Thus, the undersigned findings Dr. Peck's and Ms. Elkin's statements [are] unpersuasive.

(R. 26).

3

Considering this, the Court finds no merit in Plaintiff's argument that the ALJ erred in analyzing the consistency and supportability of Dr. Peck and Ms. Elkin's joint opinion. The ALJ explained that this opinion was inconsistent with the record because the longitudinal treatment notes in the record showed generally normal findings. (*Id.*). This is further bolstered by remarks in the record; for example, Plaintiff's cardiologist remarked she felt "well and categorically denie[d] any cardiac symptoms" and Plaintiff's oncologist observed she reported no muscle stiffness, joint pain or swelling, and no back or muscle pain. (R. 23, 24). Additionally, the ALJ adequately addressed the supportability of this joint opinion by explaining that it was not supported by these medical providers' treatment notes. (R. 26). Indeed, these medical experts stated they relied on the fact that Plaintiff's "cardiology specialist note[d] heart failure[,]" but this was at odds with their statements that Plaintiff's cardiomyopathy was "stable." (R. 24, 1814). The ALJ's analysis that this opinion was not supported because of its checklist format was also valid. *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993) (stating "[f]orm reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best."). Accordingly, Plaintiff's argument on this point fails.

Further, the Court rejects Plaintiff's argument that the ALJ ignored probative evidence. Plaintiff contends that the ALJ ignored evidence showing hip, shoulder, and knee pain, knee osteoarthritis, abnormal findings, including depression, anxiety, left lateral epicondyle tenderness, right radiostyloid, positive Finklestein's, migraines, radial styloid tenosynovitis, lateral epicondylitis, left elbow, and left ventricular systolic dysfunction. (Doc. No. 13 at 9-10). However, Plaintiff's argument overlooks that the ALJ addressed much of Plaintiff's pain, her knee osteoarthritis, and many of her abnormal findings. (R. 19, 20, 23, 24). Indeed, the ALJ noted that these alleged impairments conflicted with many of Plaintiff's reports, including that she reported to have no joint, back, or muscle pain in March 2021. (R. 23). Moreover, the ALJ specifically addressed Plaintiff's knee osteoarthritis by finding that Plaintiff had the severe impairment of osteoarthritis and noting that Plaintiff "had no palpable knee effusion and negative straight leg raising tests[.]" (R. 23). The ALJ also acknowledged many of Plaintiff's abnormal findings, including her depression, anxiety, and left ventricular global systolic function. (R. 19, 20, 24). As to the other evidence Plaintiff points to, the ALJ's analysis sufficiently encompassed the longitudinal record accurately. *See Beety-Monticelli v. Comm'r of Soc. Sec.*, 343 Fed. Appx. 743, 747 (3d Cir. 2009) (stating an ALJ "need not mention every piece of evidence in the record."). Thus, Plaintiff's argument is without merit.

Lastly, the Court finds no merit in Plaintiff's argument that the ALJ erred by finding the joint opinion unpersuasive based on Plaintiff's daily activities. Plaintiff posits that the ALJ failed to adequately explain how Plaintiff's reported activities of daily living, namely the ability to perform personal care activities and feed her dog, supported that Plaintiff was not disabled. (Doc. No. 13 at 12). However, the ALJ explained that Dr. Peck and Ms. Elkin's joint opinion was "inconsistent with the [Plaintiff's] activities of

Therefore, IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment (Doc. No. 12) is DENIED and that Defendant's Motion for Summary Judgment (Doc. No. 17) is GRANTED.

                                                s/Alan N. Bloch
                                                United States District Judge

ecf:        Counsel of record

---

daily living, which shows she has no problems with her personal care activities; walks and feeds her dog; is an emergency coordinator for her township; and can prepare complete meals, do laundry, clean, drive, and shop in stores with her husband[.]"  (R. 26).  This made logical sense as these medical professionals opined that Plaintiff was limited in basic abilities.  (*Id.*).  Accordingly, Plaintiff's argument on this point is without merit.

       The ALJ's findings and conclusions are supported by substantial evidence. Accordingly, the decision of the Commissioner must be affirmed.